# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| GLORIA LEE, | Civil Action No. 12-4624 (ES) (MAH) |
| Plaintiff, | |
| v. | OPINION |
| A TO Z TRADING LLC, and ABDERRAZAK ZAKARIA a/k/a AB ZAK, | |
| Defendants. | |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff Gloria Lee's ("Lee") motion to amend her Complaint to add a fraud-in-the-inducement claim against Defendant Abderrazak Zakaria ("Zakaria"). D.E. 58. Zakaria has opposed the motion. D.E. 60. The Court has considered the motion, opposition and applicable law. For the reasons set forth herein, Lee's motion to amend the Amended Complaint is granted.

## II. BACKGROUND

On July 24, 2012, Lee filed a Complaint against Zakaria and his company, A to Z Trading, LLC ("A to Z"), alleging claims sounding in both breach of contract and fraud. Complaint, July 24, 2012, D.E. 1. On May 27, 2016, Plaintiff filed an Amended Complaint, alleging the following counts: (1) breach of contract; (2) implied contract; (3) book account; (4) account stated; and (5) fraud. Am. Compl., D.E. 28, ¶¶ 6-40. Counts One to Four were brought against A to Z only, but Count Five was brought against both A to Z and Zakaria, jointly and

severally. *Id.* Lee alleged the following facts.

In August 2011, Lee met Zakaria at a trade show in Las Vegas, and pursuant to Zakaria's authorization, sold to A to Z 432 jackets for $84,240. Am. Complaint, D.E. 28, ¶¶ 6, 18, 19. Subsequently, A to Z amended its jacket order, which included an additional 60 jackets for $11,700, for a total number of 492 jackets at a total purchase price of $95,940. *Id.* ¶¶ 7, 8, 22, 26. The jackets were delivered to Zakaria's warehouse on October 27, 2011. *Id.* ¶¶ 7-8, 25-26. Lee alleges that Defendants failed to remit any of the $95,940 owed to Lee. *Id.* ¶¶ 8, 25.

Zakaria filed a motion to dismiss Count Five of the Amended Complaint on June 10, 2016. D.E. 29. On October 11, 2016, Judge Salas granted the motion, without prejudice, based on the economic-loss doctrine. Opinion, Oct. 11, 2016, D.E. 38. On November 30, 2016, Lee filed a motion to amend her Amended Complaint in an effort to bring a fraud claim against Zakaria that was not barred by the economic-loss doctrine. D.E. 40. This motion was dismissed for procedural reasons and Lee was granted until December 9, 2016 to file a proper motion to amend. D.E. 41. Lee filed the new motion to amend on December 8, 2016. D.E. 42. On May 8, 2017, the Court denied Lee's motion to amend as futile because the fraud claim as alleged was intrinsic to the contract and therefore, barred by the economic-loss doctrine. D.E. 47. Lee then appealed this Court's Order to Judge Salas but sought an extension of time to file the brief in support of her appeal. D.E. 48. Judge Salas granted Lee's request, and directed that any appeal of this Court's decision, and accompanying brief, be filed by July 7, 2017.[1] D.E. 49.

On October 13, 2017, new counsel for Lee entered an appearance and notified the Court that prior counsel for Lee, Robert Vort, passed away on September 3, 2017, and had been ill for

---

[1] On October 18, 2017, after new counsel for Lee informed the Court of Mr. Vort's passing, Judge Salas denied as moot the appeal of this Court's decision. D.E. 53.

2

several months before his passing.[2] D.E. 51, 52. On November 8, 2017, Lee's new counsel filed a letter with the Court seeking leave to file an appropriate Second Amended Complaint.[3] D.E. 54. The Court held a telephone status conference on December 4, 2017, to address Lee's request for leave to amend. D.E. 55. At the conclusion of the telephone status conference, the Court entered an Amended Scheduling Order setting December 22, 2017 as the deadline by which Lee must file her motion to amend. D.E. 56.

Lee filed the instant motion to amend on December 22, 2017, Zakaria filed his opposition on January 9, 2018, and Lee filed her reply on January 16, 2018. D.E. 58, 60, 61.

### III. DISCUSSION

The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC*, No. 10-1283, 2011 WL 5170445, at *2 (W.D. Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo*, 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)).

---

[2] Indeed, one of Mr. Vort's reasons for seeking an extension of time to file his brief in support of Lee's appeal of this Court's decision was that he was scheduled for heart surgery on May 29, 2017. D.E. 48.

[3] Lee's new attorney also sought leave to file a motion for default judgment against Defendant A to Z, and an extension of the deadlines set forth in the August 22, 2016 Scheduling Order. D.E. 54. The Pretrial Scheduling Order entered on August 22, 2016, *inter alia*, set January 31, 2017 as the date by which to amend pleadings. D.E. 37.

3

### a. Rule 16(b)(4)

Given that Lee's motion was filed after the original January 31, 2017 deadline for the filing of motions to amend the pleadings set forth in the Court's August 22, 2016 Scheduling Order, D.E. 37, the first question before the Court is whether good cause exists to adjust the deadline to permit Lee to now file the instant motion.

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.*, 133 F.R.D. 463, 469 (D.N.J. 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison*, 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos*, No. 09-5429, 2012 WL 1883812, at *6 (D.N.J.

May 22, 2012) (quoting *Graham v. Progressive Direct Ins. Co.*, 271 F.R.D. 112, 118 (W.D. Pa. 2010)); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.*, No. 03-2854, 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent-A-Ctr. v. Mamaroneck Ave. Corp.*, 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.'" *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 702 (E.D. Pa. Aug. 8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark*, No. 10-1405, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide

no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n., Inc. v. OZ Optics, Ltd.*, 148 F. App'x 82, 85 (3d Cir. 2005) (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

The Court finds that Lee has demonstrated good cause to modify the Court's deadline. After the Court denied Lee's December 8, 2016 motion for leave to amend, D.E. 47, Lee's counsel, Mr. Vort, appealed the denial to Judge Salas, but then he sought, D.E. 48, and obtained, an extension of time to file a brief in support of the appeal, D.E. 49. Mr. Vort sought the extension at that time, in part, due to his health condition. D.E. 49. Mr. Vort then fell gravely ill, and subsequently, passed away on September 3, 2017, D.E. 54. Sometime between September 3, 2017 and October 13, 2017, Lee retained new counsel, Randy T. Pearce, to represent her interests in this matter. D.E. 51. On October 13, 2017, Mr. Pearce entered an appearance on behalf of Plaintiff and informed the Court that he was reviewing Mr. Vort's file and would shortly file a status letter with the Court. *Id.* Less than a month later, on November 8, 2017, Mr. Pearce filed a letter with the Court seeking leave to file an appropriate Second Amended Complaint. D.E. 54. On December 4, 2017, this Court held a telephone status conference with counsel for both Lee and Zakaria to address whether Plaintiff should be permitted to file the motion for leave to amend at this stage of the litigation, and directed Plaintiff to file any new motion to amend by December 22, 2017. D.E. 55, 56.

The Court finds that Lee has demonstrated good cause to adjust the deadline to permit her to now file the instant motion. Even during his illness, Mr. Vort acted diligently and took adequate steps to protect his client's interests so that she would not forfeit the ability to appeal the denial of the prior motion to amend. Having contacted the Court soon after being retained to

alert the Court of the circumstances of Mr. Vort's passing, and seeking time in which to review Mr. Vort's file, the Court finds that Mr. Pearce also acted diligently in an attempt to protect his client's interests with respect to her desire to amend her complaint. Lee correctly argues that "presumably, as result of his failing health, Plaintiff's former Counsel was unable to comply with the specific directive of the Court and/or timeframes." Pl.'s Brief, D.E. 58-7, at 10. Therefore, the Court finds that Lee has demonstrated good cause for the amendment of the previous deadline for the filing of motions to amend.[4] *See Globespan*, 2005 WL 1638136, at *3 ("A finding of good cause depends on the diligence of the moving party.").

    **b. Rule 15(a)(2)**

Under Rule 15(a)(2), a plaintiff may amend his complaint "when justice so requires." The Court may deny a motion to amend the pleadings only where there is (1) undue delay, (2) bad faith or dilatory motive, (3) undue prejudice, (4) repeated failures to cure deficiencies, or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004) ("We have held that motions to amend pleadings [under Rule 15(a)] should be liberally granted.") (citations omitted); *Grayson v. Mayview State Hosp.*, 293 F.3d

---

[4] For all of the same reasons, the Court finds that Zakaria's reliance on Fed. R. Civ. P. 59(b) and 60(b) is misplaced. Lee, and her current counsel, cannot be held to an impossible standard to meet. As discussed, Mr. Vort seemed to be doing his best to protect his client's interests even in the throes of his illness. Presumably, Lee and Mr. Pearce did not become aware of the gravity of Mr. Vort's illness and passing, until way beyond the twenty-eight (28) day period for filing a motion for a new trial after entry of judgment in accordance with Fed. R. Civ. P. 58. Accordingly, Zakaria argues that Lee's only recourse would be to vacate a judgment under Rule 60 for very specific reasons, none of which, Zakaria argues, Lee has demonstrated. But this argument misses the mark for two reasons. First, no judgment has been entered in this matter. Indeed, Judge Salas's dismissal of Lee's appeal of this Court's decision was without prejudice and explicitly recognized that Mr. Vort had passed away and Mr. Pearce was reviewing the file and would be filing a status letter with the Court. Therefore, there is no final judgment in this matter and both Rules 59 and 60 are wholly inapplicable. Second, as will be discussed, *infra*, Lee has established that certain facts had been left out of Lee's Complaint due to excusable neglect/inadvertence.

103, 108 (3d Cir. 2002) ("Under Rule 15(a), if a plaintiff requests leave to amend a complaint . . . such leave must be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."). Here, Zakaria alleges that the Court should deny Plaintiff's motion due to the futility of the amendment, undue delay and prejudice.

1. **Undue Delay**

While delay alone is not sufficient to justify denial of leave to amend, "at some point, … delay will become 'undue,' placing an unwarranted burden on the court … [and] an unfair burden on the opposing party." *Adams v. Gould Inc.*, 739 F.2d 858, 864 (3d Cir. 1984). When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied. *Id.* "[T]he question of undue delay requires that we focus on the movant's reasons for not amending sooner." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). "Indeed, amendments may be made during trial, after the close of testimony, or even after judgment." *Ajax Enterprises v. Fay*, 2007 WL 766335, *2 (D.N.J. March 7, 2007) (citing Wright, Miller & Kane, *Federal Practice and Procedure Civil 2d* § 1494, at 51-52).

The Court does not find evidence of undue delay. Zakaria argues that all the information that Lee cites for the proposition that the she was fraudulently induced to enter into the contract with A to Z was readily available to Lee since the time of the alleged fraud in August 2011, now nearly seven years ago. Def.'s Opp'n Br., D.E. 60, at 8. However, Lee argues that the purpose of this amendment is to "cure the inadvertent omission of critical facts in Lee's proposed Second Amended Complaint. Pl.'s Reply Brief, D.E. 61, at 4. Indeed, Lee's new counsel, Mr. Pearce, believes that the critical facts may have been inadvertently omitted due to prior counsel's poor health. *Id.* at 6. There is nothing in the facts before this Court which indicates that Plaintiff's

8

failure to amend the Complaint properly earlier in the litigation constitutes "undue delay." The Court is satisfied with Lee's representations that the relevant facts to the fraud-in-the-inducement claim were merely left out of the prior attempts to amend the Complaint due to inadvertence and excusable neglect.

2. **Undue Prejudice**

While the question of undue delay and bad faith focuses on the plaintiff's motive for not amending earlier, the issue of prejudice focuses on the effect on Defendant. *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). The factors have been interpreted to mean that "'prejudice to the non-moving party is the touchstone for the denial of an amendment.'" *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993) (quoting *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir.1978)). An amendment that changes the legal and factual basis may create undue prejudice, especially when new discovery, costs, and preparation are required to defend against the new theories. *Luciani v. City of Philadelphia*, 13-4077, 2016 WL 861042, at *2 (3d Cir. 2016).

In deciding whether the proposed amendment would unfairly prejudice Defendant, courts consider whether permitting the amendment would (1) require defendant to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). The Court does not find that granting Lee's proposed amendment to add a fraud-in-the-inducement claim against Zakaria would unduly prejudice Zakaria. Although Zakaria argues that he has "incurred substantial time and cost defending a claim which lacks any basis in law or fact," mere inconvenience in defending a suit does not constitute undue prejudice. *See Harrison Beverage*, 133 F.R.D. at 468. Zakaria's

argument that he will be prejudiced if Lee is permitted to amend to add the fraudulent inducement claim falls flat. The allegations against Zakaria regarding the contract formed by his company after the trade show in Vegas in August 2011 have existed from the outset of this case, and while Lee inartfully plead her fraud-in-the-inducement claim from the outset, the substance of the claim against Zakaria is not new. Therefore, Lee's motion cannot be denied on grounds of undue prejudice.

### 3. Futility

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or immediately subject to summary judgment for the defendant." *Am. Corporate Society v. Valley Forge Ins. Co.*, 424 F. App'x 86, 90 (3d Cir. 2011) (quoting Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007)); *see also* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1487 (3d ed. 2010).

To determine whether an amendment would be "properly dismissed," the Court employs the standard applied to Rule 12(b)(6) motions to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Under this standard, the question before the Court is not whether the movant will ultimately prevail, but whether the complaint sets forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (establishing that a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); *Harrison Beverage*, 133 F.R.D. at 468 ("'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue."). A two-part analysis determines whether this standard is met. *Fowler*, 578 F.3d at 210 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 629 (2009)).

First, a court separates the factual and legal elements of a claim. *Fowler*, 578 F.3d at 210. All well-pleaded facts set forth in the pleading and the contents of the documents incorporated therein must be accepted as true, but the Court may disregard legal conclusions. *Id.* at 210–11; *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3rd Cir. 2010); *see also Iqbal*, 556 U.S. at 678 (noting that a complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertions" devoid of "further factual enhancement") (alterations omitted) (internal quotations marks omitted).

Second, as stated above, a court determines whether a plaintiff's facts are sufficient "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Fowler*, 578 F.3d at 211. As the United States Supreme Court instructed in *Iqbal*, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. The plausibility standard is not a "probability requirement," but the well-pleaded facts must do more than demonstrate that the conduct is "merely consistent" with liability so as to "permit the court to infer more than the mere possibility of misconduct." *Id.* at 678–79 (citations omitted) (internal quotation marks omitted). This "context-specific task . . . requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

A court conducting a futility analysis based only upon the sufficiency of the pleading must consider a limited record. Specifically, a court may consider only the proposed pleading, exhibits attached to that pleading, matters of public record, and undisputedly authentic documents provided the claims are based on those documents. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *accord West Penn*, 627 F.3d at

97 n.6 (reiterating the rule and its limited exception for documents that are "integral or explicitly relied upon in the complaint").

Lee seeks to amend her Amended Complaint to include a claim for fraud in theinducement against Zakaria. However, Zakaria contends that Lee's claim for fraud in the inducement is barred by the economic-loss doctrine. Specifically, Zakaria maintains that Lee improperly treats the two Defendants, Zakaria and A to Z, as a single unit. To illustrate his point, Zakaria argues:

> Plaintiff claims that she only contracted with and granted concessions to A to Z because Zakaria himself represented that he was involved with other businesses? Plaintiff claims that she hoped to continue to work with Zakaria and only entered into the contract with A to Z based upon this hope? Combined, these claims simply demonstrate that Plaintiff improperly treats both Defendants as a single unit. She believes that Zakaria should be held liable for the debts of A to Z, despite the law clearly providing otherwise.

Def.'s Opp'n Br., D.E. 60, at 10.

"The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir. 1995)). "[C]ourts in this district generally distinguish between claims intrinsic to the contract, which are barred by the doctrine, and claims extrinsic to the contract, which are not barred by the doctrine." *Ribble Co. v. Burkert Fluid Control Sys.,* 2016 U.S. DIST LEXIS 161746 at * 8 (D.N.J. Nov. 22, 2016). One exception to the economic-loss doctrine is a claim for fraudulent inducement in the making of the contract based on pre-contract misrepresentations. *Fischell v. Cordis Corp.,* 2016 U.S. DIST LEXIS 131260 (D.N.J. Sep. 26, 2016). "[C]ourts will generally hold that '[f]raud claims can proceed alongside breach of contract claims where there exists fraud-in-the-inducement of a contract or

12

an analogous situation based on pre-contractual misrepresentations,' as opposed to an allegation of fraud in the performance of the contract." *Ribble Co.,* 2016 U.S. DIST LEXIS 161746, at *8 (quoting *RNC Sys., Inc. v. Modern Tech Grp., Inc.,* 861 F. Supp. 2d 436, 451 (D.N.J. 2012)).

Under New Jersey law, to establish a claim for fraudulent inducement, a plaintiff must prove: "(1) a material representation of a presently existing or past fact; (2) made with no knowledge of its falsity; and (3) with the intention that the other party rely thereon; (4) resulting in reliance by that party; (5) to his detriment." *RNC Sys., Inc.,* 861 F. Supp. 2d at 451. Accordingly, Plaintiff must demonstrate that the "underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 688, 676 (D.N.J. 2009).

Here, Zakaria argues that Lee's claim for fraud in the inducement must fail because while Zakaria allegedly made the representations, it was A to Z with which Lee contracted. Zakaria also argues that Lee presupposes that Zakaria and his company are one defendant, each liable for the actions of the other. Lee, however, argues that she can pursue a fraud-in-the-inducement claim against Zakaria because the misrepresentations made by Zakaria, *i.e.*, that he maintained multiple storefronts and business, and was seeking to maintain a business relationship with Lee, were made pre-contract and induced Lee into entering into the contract.

Before reaching whether Lee's fraud-in-the-inducement claim as plead is sufficient such that permitting the amendment would not be an exercise in futility, the Court will address Zakaria's argument that Lee seeks to hold each Defendant liable for the actions of the other. First, the Court notes that Zakaria is correct insofar as Plaintiff seeks to hold Zakaria liable on the breach of contract claims. It is well settled that the principal or agent of a company cannot be

13

held personally liable for the actions of the company on a breach of contract claim. *See*, *e.g.*, *Lyon v. Barrett*, 89 N.J. 294, 300 (1982) ("a corporation is an entity separate from its stockholders"). Therefore, Lee cannot maintain Zakaria as a Defendant on Counts One through Four, all of which sound in breach of contract. However, Zakaria misses the mark with respect to the fraud claim. It is clear from the Proposed Second Amended Complaint that Lee seeks to hold only Zakaria liable on the fraud-in-the-inducement claim, as A to Z is not named as a Defendant therein. It is equally clear that the agent of a company can be named as a defendant for a fraud-in-the-inducement claim. *See*, *e.g.*, *Network Commodities, LLC v. Golondrinas Trading Co., LTD.*, 2013 WL 1352234, at *6 (D.N.J. Apr. 1, 2013); *State Capital Title & Abstract Co. v. Pappas Business Services, LLC*, 646 F. Supp.2d 668, 682 (D.N.J. 2009).

The Court will now turn to whether Lee has sufficiently plead a fraud-in-the-inducement claim against Zakaria. In *G&F Graphic Servs. v. Graphic Innovators, Inc.,* 18 F. Supp. 3d 583, 593 (D.N.J. 2014), the district court found that the fraud-in-the-inducement exception to the economic-loss doctrine applies where the alleged facts "supported an inference that [plaintiff] would not have contracted to purchase [a press] given its knowledge of the historical problems with that model, [] thereby supporting a conclusion that the alleged misrepresentation induced [plaintiff] to enter into a contract with [defendant]." *Id*. at 593. The court found that "such representations are necessarily 'extraneous to the contract' because they took place prior to the execution of the contract[.]" *Id.* (quoting *Bracco,* 226 F. Supp. 2d at 564). Here, the Proposed Second Amended Complaint explicitly alleges that "[a]t the Trade Show and prior to the preparation and/or placement of the subject Purchase Order, Defendant Ab Zak represented to the Plaintiff that he was interested in finding a new coat manufacturer/business partner and creating a long-term business relationship with them" and "he personally maintained several

14

fully functioning and operational businesses with multiple stores in the New York/New Jersey area." D.E. 58-2, ¶¶ 19, 21. Further, Lee alleges that Zakaria knew these statements to be false, intended Lee to rely on them, and that "[i]n furtherance of these representations, Plaintiff allowed the Defendant Zak to place an order for 432 jackets from Plaintiff with a promise to pay the requisite 30% deposit down and the balance of 70% within 30 days after the jackets were delivered." *Id.* at ¶¶ 24, 25, 27. Lee's Proposed Second Amended Complaint clearly alleges that the misrepresentation occurred before Lee decided to work with A to Z. Zakaria has therefore not shown that Lee's claim is barred by the economic-loss doctrine.

Zakaria also argues that his expression of interest in forming a long-term business relationship is not a presently existing fact, and therefore, cannot constitute a fraud. Zakaria's argument misses the mark. Courts in this district have held the exact opposite to be true. *See Bracco*, 226 F.Supp.2d at 564 (finding that where plaintiff alleged that a defendant falsely represented an intent to honor a promise to plaintiff, that misrepresentation of present fact constituted a breach of the separate duty not to commit a fraud); *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1020, 1031–32 ("[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud" in the inducement).

Accordingly, the Court finds that it would not be futile to permit Lee to amend the Complaint to add a fraud-in-the-inducement claim against Zakaria.

## IV. CONCLUSION

For the reasons stated herein, Lee's motion to amend the Complaint, D.E. 58, is granted. The Court will issue an Order consistent with this Opinion.

*s/ Michael A. Hammer*
**UNITED STATES MAGISTRATE JUDGE**

Date: June 13, 2018